UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION



| | |
|---|---|
| RUBEN VEGA,<br>Reg. No. 09643-073,<br>    Petitioner,<br><br>v.<br><br>THOMAS E. BERGAMI, Warden,<br>    Respondent. | §<br>§<br>§<br>§<br>§    EP-20-CV-127-DCG<br>§<br>§<br>§ |

## MEMORANDUM OPINION AND ORDER

Ruben Vega seeks Court intervention on his behalf in a pro se "Omnibus Motion." Pet'r's Pet., ECF No. 1. He asks the Court to grant him pre-sentencing credit for time served in state custody, recommend that he serve the maximum amount of time in a residential re-entry center, and order his placement in home confinement due to the COVID-19 pandemic. *Id.* at 1. His motion, which the Court construes as a petition for a writ of habeas corpus under 28 U.S.C. § 2241, is dismissed for the reasons discussed below. *See Hussain v. Bos. Old Colony Ins. Co.*, 311 F.3d 623, 633 n. 39 (5th Cir. 2002) ("[A]s in other areas of pleading, we construe the pleading liberally according to its substance rather than its form or label.").

## BACKGROUND

Vega is a 40-year-old prisoner at the La Tuna Federal Correctional Institution (FCI La Tuna) in Anthony, Texas.[1] https://www.bop.gov/inmateloc/ (search for Reg. No. 09643-073) (last visited July 1, 2020). His projected release date is January 3, 2022. *Id.*

Vega was arrested by local authorities in South Dakota for a state parole violation on September 3, 2003. Pet'r's Pet. 17 (Regional Administrative Remedy Appeal), ECF No. 1.

---

[1] Anthony is located in El Paso County, Texas, which is within the Western District of Texas. 28 U.S.C. § 124(d)(3).

His parole was revoked and he served time in state custody until his release, once again to parole, on April 23, 2004. *Id.*

Meanwhile, on October 31, 2003, he pled guilty to conspiracy to possess with intent to distribute more than 500 grams of methamphetamine in the United States District Court for the District of South Dakota. *United States v. Vega*, 4:03-CR-40081-LLP-1 (D. S. D.). "This was not Vega's first drug offense. He had two prior state-court felony convictions for the '[u]nauthorized manufacture, distribution, counterfeiting or possession of [a] schedule I or II substance,' in violation of South Dakota Criminal Law § 22-42-2." *Vega v. Niklin*, No. EP-18-CV-96-DCG, 2018 WL 1750746, at *1 (W.D. Tex. Apr. 10, 2018) (quoting Vega's petition in EP-18-CV-96-DCG). As a result, he was sentenced as a career offender to 262 months' imprisonment on January 26, 2004. *Id.* at *2.

Vega applied to the Bureau of Prisons (BOP) for pre-sentencing credit toward his federal sentence. Pet'r's Pet. 11 (Resp. from Correctional Program Specialist), ECF No. 1. He was granted credit for time served from his sentencing on January 26, 2004, until his release on parole by state authorities on April 23, 2004, after the BOP Designation and Sentence Computation Center (DSCC) contacted the sentencing court and determined "a concurrent designation was appropriate." *Id.*

Vega now asks the Court to order Thomas E. Bergami, the Warden at FCI La Tuna, to give him credit toward his federal sentence, pursuant to 18 U.S.C. § 3585, for the time he served in state custody after his arrest on September 3, 2003, until his sentencing by the federal court on January 26, 2004. *Id.* at 4. He further asks the Court to recommend his placement in a pre-release residential reentry center for the maximum amount of time possible—twelve months—

under 18 U.S.C. § 3624. *Id.* at 7–8. Notably, Vega does not claim Bergami denied him placement or ordered his residence in such a facility for less than twelve months. He finally asks, in the alternative, for the Court to order his placement in home confinement due to the COVID-19 pandemic, pursuant to 18 U.S.C. § 3582(c)(1)(A). *Id.* at 9.

Vega failed to pay the $5.00 filing fee for a § 2241 petition. However, he was represented by a Federal Public Defender in his criminal case. He presumably has limited financial resources. He will accordingly be permitted to proceed without prepaying costs or fees in this matter.

## APPLICABLE LAW

A petitioner may attack the manner in which his sentence is being executed in the district court with jurisdiction over his custodian pursuant to a petition for a writ of habeas corpus under 28 U.S.C. § 2241. *Reyes-Requena v. United States*, 243 F.3d 893, 900–01 (5th Cir. 2001); *Tolliver v. Dobre*, 211 F.3d 876, 877 (5th Cir. 2000); *United States v. Cleto*, 956 F.2d 83, 84 (5th Cir. 1992). However, "[h]abeas corpus relief is extraordinary and 'is reserved for transgressions of constitutional rights and for a narrow range of injuries that . . . if condoned, result in a complete miscarriage of justice.'" *Kinder v. Purdy*, 222 F.3d 209, 213 (5th Cir. 2000) (quoting *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992)). As a result, a petitioner is entitled to § 2241 relief only to remedy a restraint of liberty in violation of the constitution, treaties, or laws of the United States. *United States v. Hayman*, 342 U.S. 205, 211–12 & n.11 (1952). To prevail, a habeas corpus petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c).

During its initial screening of a § 2241 petition, a reviewing court accepts a petitioner's

allegations as true. 28 U.S.C. § 2243; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). It also evaluates a petition presented by pro se petitioner under more a lenient standard than it applies to a petition submitted by counsel. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But it must still find "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 556. It must "award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief." Rule 4 of the Rules Governing § 2254 Cases in the United States District Courts (applicable to § 2241 petitions pursuant to Rule 1(b)).

## ANALYSIS

### A. Exhaustion

An initial issue which a court must address when screening a § 2241 petition is whether the petitioner has exhausted his administrative remedies. *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994) (per curiam). A petitioner seeking habeas relief must first exhaust all administrative remedies which might provide appropriate relief before seeking judicial review. *Id.*; *Rourke v. Thompson*, 11 F.3d 47, 49 (5th Cir. 1993). Exhaustion means "proper exhaustion," including compliance with all administrative deadlines and procedures. *Cf. Woodford v. Ngo*, 548 U.S 81, 90 (2006) (discussing exhaustion under the Prison Litigation Reform Act).

The BOP uses a multi-tiered administrative remedy program "to allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. § 542.10(a). First, the inmate must attempt to resolve the issue informally with the prison staff. *Id.* § 542.13(a). Then, if the inmate cannot resolve the complaint informally, he must file a

formal written administrative remedy request on a BP-9 form directed to the prison warden. *Id.* § 542.14. Any adverse decision by the warden must be appealed to the appropriate regional director by filing a BP-10 form. *Id.* § 542.15(a). The final step in the administrative review process is an appeal to the Office of General Counsel on a BP-11 form. *Id.* If an inmate does not receive a response within the time allotted, he may consider the absence of a response a denial at that level and proceed to the next level. *Id.* An inmate may seek relief in federal court only after he has exhausted all levels of the administrative review process. *See Lundy v. Osborn*, 555 F.2d 534, 535 (5th Cir. 1977) ("Only after such remedies are exhausted will the court entertain the application for relief in an appropriate case.").

"Exceptions to the exhaustion requirement are appropriate where the available administrative remedies either are unavailable or wholly inappropriate to the relief sought, or where the attempt to exhaust such remedies would itself be a patently futile course of action." *Fuller*, 11 F.3d at 62 (internal citations omitted). Exceptions may be made only in "extraordinary circumstances," and the petitioner bears the burden of demonstrating the futility of administrative review. *Id.*

Vega had the BOP administrative review process, as described above, available to address his claims. He provided evidence that he appealed the decision concerning his pre-sentencing credit to the regional director. Pet'r's Pet. 17 (Regional Administrative Remedy Appeal), ECF No. 1. He offered evidence that he asked the DSCC to reconsider its calculation of his sentence. *Id.* at 11 (Resp. from Correctional Program Specialist). He delivered evidence that he requested but was denied home confinement at the unit level. Inmate Request to Staff 2, ECF No. 2. Notably absent from his documentation was any evidence that he pursued his claim

to the Office of General Counsel. Vega conceded he had not exhausted his claims. *Id.* at 7–8. He argued his "failure to exhaust administrative remedies should be excused due to futility. *Id.* at 7. He also suggested the BOP would not timely respond to his claims. *Id.*

If Vega had meritorious claims, there is nothing to suggest that the BOP would not have afforded him relief through its administrative review process. And if the BOP made an error concerning his requests for time credit, residential reentry center placement or home confinement, he should give the BOP the opportunity to correct those errors before seeking judicial intervention. *See Vega v. Thompson*, 937 F.2d 217, 219 (5th Cir. 1991) (suggesting an agency should be given opportunity to correct its own error before an aggrieved party seeks judicial intervention). Indeed, an attempt by Vega to exhaust through the BOP administrative review process would clearly *not* be a patently futile course of action. *See Overshown v. Upton*, 466 F. App'x 361 (5th Cir. 2012) (citing *United States v. Dowling*, 962 F.2d 390, 393 (5th Cir. 1992) ("If a prisoner feels he has been improperly refused credit for time he has served in state custody, the prisoner must first exhaust his administrative remedies with the BOP before pursuing judicial review of the BOP's computations."); *Garza v. Davis*, 596 F.3d 1198, 1204 (10th Cir. 2010) ("BOP memoranda issued on April 14, 2008 and November 14, 2008 demonstrate [the] BOP recognizes its authority to place inmates in RRCs . . . for periods of time exceeding six months and do not reflect any policy of categorical denial.") (quotations and citations omitted). While "[i]t is true that exhaustion . . . takes time, . . . there is no reason to assume that . . . prison administrators . . . will not act expeditiously." *Preiser v. Rodriguez*, 411 U.S. 475, 494–95 (1973).

Hence, the Court finds Vega has not exhausted—and dismissal of his claims is warranted

on that basis alone. *See Rivkin v. Tamez*, 351 F. App'x 876, 877–78 (5th Cir. 2009) (per curiam) (affirming dismissal of prisoner's § 2241 petition for failure to exhaust administrative remedies). But even if Vega had properly exhausted, the Court would still not grant him § 2241 relief.

### B. 18 U.S.C. § 3585

Vega asks the Court to "order . . . additional credit" for the time he served in state custody before his federal sentencing. Pet'r's Pet. 4, ECF No. 1.

"There is no statutory authority for a district court to award credit against federal sentence for time spent in state custody." *United States v. Barrera-Saucedo*, 385 F.3d 533, 536 (5th Cir. 2004). "After a district court sentences a federal offender, the Attorney General, through the BOP, has the responsibility for administering the sentence." *See United States v. Wilson*, 503 U.S. 329, 335 (1992) (citing 18 U.S.C. § 3621(a) ("A person who has been sentenced to a term of imprisonment . . . shall be committed to the custody of the Bureau of Prisons until the expiration of the term imposed")); *see also* 28 C.F.R. § 0.96 ("The Director of the Bureau of Prisons is authorized to exercise or perform any of the authority, functions, or duties conferred or imposed upon the Attorney General by any law relating to the commitment, control, or treatment of persons (including insane prisoners and juvenile delinquents) charged with or convicted of offenses against the United States."). Thus, the Bureau of Prisons—not the judiciary—is responsible for implementing the statutes concerning the computation of a federal sentence.

According to 18 U.S.C. § 3585(a), federal sentence does not commence until the BOP receives the defendant into its custody to serve the sentence:

> **(a) Commencement of sentence.** -- A sentence to a term of imprisonment

>commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.

The BOP may grant credit, according to 18 U.S.C. § 3585(b), against a federal sentence for time spent in pretrial custody if the time is not credited against another sentence:

> **(b) Credit for prior custody.** -- A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences –
>
>> (1) as a result of the offense for which the sentence was imposed; or
>>
>> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> *that has not been credited against another sentence.*

When Congress enacted § 3585(b), it "made clear that a defendant could not receive a double credit for his detention time." *Wilson*, 503 U.S. at 337. Even "[t]ime spent by a prisoner in federal custody for the purpose of appearing in federal court via a writ of habeas corpus ad prosequendum is not counted towards the federal sentence if that time was credited toward [a] state sentence." *Lopez v. Jeter*, 170 F. App'x 894, 895 (5th Cir. 2006) (citing *United States v. Brown*, 753 F.2d 455, 456 (5th Cir. 1985)).

Vega erroneously maintains he should receive credit toward his federal sentence from the time of his arrest for the probation violation on September 3, 2003, until the time of his federal sentencing on January 26, 2004. Pet'r's Pet. 4, ECF No. 1. He is mistaken in his belief as the time he wants credited toward his federal sentence was previously credited against the state sentence imposed upon him after the State of South Dakota revoked his parole. *Id.* at 17 (Regional Administrative Remedy Appeal). "There is neither statutory nor jurisprudential

authority for the granting of federal prison credit for time served in state custody on an unrelated charge prior to a federal charge or federal detainer." *United States v. Garcia-Gutierrez*, 835 F.2d 585, 586 (5th Cir. 1988). This includes credit for the time spent "in federal custody pursuant to a writ of habeas corpus prosequendum." *Trejo v. Warden*, 238 F. App'x 12, 13 (5th Cir. 2007).

Vega is not entitled to additional credit toward his federal sentence. Hence, he is not entitled to § 2241 relief on his claim.

### C. 18 U.S.C. § 3624

Vega also asks the Court to recommend his release to a residential re-entry center "as soon as practicable." Pet'r's Pet. 5, ECF No. 1.

The Court observes that two statutes govern the discretion of the BOP to place an inmate in a particular facility: 18 U.S.C. § 3621(b), which addresses the imprisonment of a convicted person, and the Second Chance Act, which provides for post-imprisonment rehabilitation services.

Section 3621(b) grants the BOP the authority and discretion to designate the place of confinement. Under § 3621(b), the BOP:

> may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable.

18 U.S.C. § 3621(b). In making this determination, the BOP must consider "(1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner; (4) any statement by the court that imposed the sentence . . . and

(5) any pertinent policy statement issued by the Sentencing Commission[.]" *Id.*

The Second Chance Act directs "a shift from policing those on parole to rehabilitating them," and places on the "parole system . . . an increasing special obligation to help federal offenders successfully reenter into society." *United States v. Wessels*, 539 F.3d 913, 915 (8th Cir. 2008) (Bright, J., concurring).  It authorizes funding for drug treatment, job training and placement, educational services, and other services or support needed to rehabilitate prisoners and reduce recidivism.  *Id.*  The Act also addresses placement in a community corrections facility such as a halfway house.  18 U.S.C. § 3624(c).  It grants the BOP Director the discretion to place a prisoner in a community corrections facility for up to twelve months, instead of limiting that time to six months as permitted by the prior law.  *Id.*  It authorizes the Director, "to the extent practicable, . . . to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months."  *Id.*  It further directs the BOP to issue regulations to ensure that placements in community correctional facilities are "(A) conducted in a manner consistent with section 3621(b) of this title; (B) determined on an individual basis; and (C) of sufficient duration to provide the greatest likelihood of successful reintegration into the community."  *Id.* § 3624(c)(6).

The BOP adopted regulations implementing the Second Chance Act, codified at 28 C.F.R. §§ 570.20–.22, effective October 21, 2008.  Both the statute and the regulations instruct the BOP to determine the amount of time a prisoner should spend in residential reentry center "on an individual basis."  *Id.*; 28 C.F.R. § 570.22.

The Supreme Court has consistently held that a prisoner has no constitutional right to be confined in any particular place—including a halfway house or home confinement.  *See*

*McKune v. Lile*, 536 U.S. 24, 39 (2002) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise."); *Sandin v. Conner,* 515 U.S. 472, 478 (1995) ("the Due Process Clause did not itself create a liberty interest in prisoners to be free from intrastate prison transfers."); *Meachum v. Fano*, 427 U.S. 215, 224 (1976) ("The conviction has sufficiently extinguished the defendant's liberty interest to empower the State to confine him in any of its prisons.").

The Attorney General—and by delegation the BOP—has exclusive authority and discretion to designate the place of an inmate's confinement. *Moore v. United States Att'y Gen.*, 473 F.2d 1375, 1376 (5th Cir. 1973); *Ledesma v. United States*, 445 F.2d 1323, 1324 (5th Cir. 1971). "[A]ny approach that puts the judicial branch in charge of designating the place of confinement for a federal prisoner—no matter how well justified on utilitarian grounds—collides with 18 U.S.C. § 4082(b), which gives the Attorney General unfettered discretion to decide where to house federal prisoners." *In re Gee*, 815 F.2d 41, 42 (7th Cir. 1987).[2]

Moreover, a petitioner complaining about a BOP assignment is not entitled to judicial relief for an alleged "violation of his Fifth Amendment right to due process because 'the failure to receive relief that is purely discretionary in nature does not amount to a deprivation of a liberty interest.'" *Assaad v. Ashcroft*, 378 F.3d 471, 475 (5th Cir. 2004) (quoting *Mejia Rodriguez v. Reno*, 178 F.3d 1139, 1146 (11th Cir. 1999) (citing *Conn. Bd. of Pardons v. Dumschat*, 452 U.S. 458, 465 (1981))); *accord Nativi–Gomez v. Ashcroft*, 344 F.3d 805, 808 (8th Cir. 2003); *see also Munoz v. Ashcroft*, 339 F.3d 950, 954 (9th Cir. 2003) ("Since discretionary relief is a privilege . . ., denial of such relief cannot violate a substantive interest protected by the

---

[2] The statutory language in 18 U.S.C. § 4082(b) was re-codified through Pub. L. 94-473, Title 2 II, § 212(a)(2), Oct. 12, 1984, and is currently found at 18 U.S.C. § 3621(b).

Due Process clause."); *cf. Hallmark v. Johnson*, 118 F.3d 1073, 1080 (5th Cir. 1997) ("[A] statute which 'provides no more than a mere hope that the benefit will be obtained . . . is not protected by due process.'") (alteration in original) (quoting *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 11 (1979)).

Thus, after reviewing Vega's petition and the applicable statutes, the Court finds the BOP has exclusive authority and discretion to determine if and when to assign Vega to a residential reentry center. The Court further finds that Vega provided no evidence that Bergami acted "arbitrarily, capriciously, and in a discriminatory manner," violated the Second Chance Act or discriminated against Vega with regard to his placement.

Furthermore, if and when a prisoner should serve the remainder of a sentence in a residential reentry center or home confinement is best left to the discretion, experience, and expertise of the BOP. *See McKune v. Lile*, 536 U.S. 24, 39 (2002) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise."). "[A]ny approach that puts the judicial branch in charge of designating the place of confinement for a federal prisoner—no matter how well justified on humanitarian grounds—collides with 18 U.S.C. § 4082(b), which gives the Attorney General unfettered discretion to decide where to house federal prisoners." *In re Gee*, 815 F.2d 41, 42 (7th Cir. 1987).

As a result, the Court will not recommend Vega's placement in a pre-release residential reentry center for the maximum amount of time possible or his placement in home confinement.

**D. 18 U.S.C. § 3582**

Finally, Vega asks the Court to grant him "compassionate release" under 18 U.S.C. § 3582 due to the threat to his health caused by the COVID-19 pandemic. Pet'r's Pet. 1, ECF No.

1; Pet'r's Letter 1, ECF No. 2.

Section 3582 permits the sentencing court to reduce or modify a sentence only in the "limited number of circumstances." *United States v. Bridges*, 116 F.3d 1110, 1112 (5th Cir. 1997). These circumstances include when a court finds "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A). A court may grant a motion to modify a sentence, however, only where "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Sentencing Guideline § 1B1.13 provides "the court may reduce a term of imprisonment" if it determines that (1) "extraordinary and compelling reasons warrant the reduction," (2) "the defendant is not a danger to the safety of any other person," and (3) "the reduction is consistent with this policy statement." U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 (U.S. SENTENCING COMM'N 2019).

Vega does not contend that the BOP, or anyone else, misconstrued his sentence, wrongly extended his sentence, or otherwise erred in the enforcement or execution of his sentence. Instead, he asks the Court to modify his sentence and order his compassionate release due to the COVID-19 pandemic. "A compassionate release request is not a matter of illegal or unconstitutional restraint." *Figueroa v. Chapman*, 347 F. App'x 48, 50 (5th Cir. 2009). Consequently, a petition under § 2241 is not the proper means by which Vega may obtain the relief he seeks.

"Such a request is most appropriately brought as a motion under 18 U.S.C. § 3582." *Ono v. Pontesso*, 162 F.3d 1169 (9th Cir. 1998). If Vega wishes to pursue a compassionate release, he may do so by filing a § 3582 motion to modify his sentence in the district where he

-13-

was sentenced—the District of South Dakota. 18 U.S.C. § 3582(c); *Anderson v. United States*, No. CIV. A. 1:07-CV-942, 2008 WL 1836673, at *2 (E.D. Tex. Apr. 23, 2008). This Court does not have the authority to grant Vega the relief he requests.

## CONCLUSIONS AND ORDERS

The Court concludes that Vega has not administratively exhausted his claims. The Court additionally concludes that Vega has not met his burden of showing that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c). Hence, it plainly appears from the petition and attached exhibits that Vega is not entitled to § 2241 relief. The Court, therefore, enters the following orders:

**IT IS ORDERED** that Vega is **GRANTED** leave to proceed without prepaying costs or fees.

**IT IS FURTHER ORDERED** that Vega's pro se "Omnibus Motion" (ECF No. 1), which the Court construes as a petition for a writ of habeas corpus under 28 U.S.C. § 2241, and his civil cause are **DISMISSED WITHOUT PREJUDICE** for failure to exhaust.

**IT IS FURTHER ORDERED** that all pending motions, if any, are **DENIED** as moot.

**IT IS FINALLY ORDERED** that the Clerk shall **CLOSE** this case.

SIGNED this ___6th___ day of July 2020.

DAVID C. GUADERRAMA
UNITED STATES DISTRICT JUDGE